Good morning. May it please the Court, Kent Young, Federal Defenders, on behalf of Mr. Albino. I'll begin by addressing the sentencing issue. Thirty-one jurisdictions, as well as the Model Penal Code, recognize the defense of voluntary abandonment or renunciation to attempt. But in California, an individual can be convicted of an attempt even if he voluntarily abandons his goal. Because California's definition of attempt is categorically overbroad, the District Court erred in applying a plus-16 offense-level increase for Mr. Albino's prior convictions for attempted murder and attempted kidnapping, because California does not recognize the defense of voluntary abandonment or renunciation. And let me just give you a concrete example of a case in California where an individual has actually voluntarily abandoned his effort to commit the substance offense but has nevertheless been convicted. In People v. Staples, and the citation is 6 Cal. App. 3d61, the defendant was convicted of attempted burglary. And that was a case where the defendant rented an office space above a bank, which was below the office space. He began by drilling holes through the floor. He didn't drill all the way through. And he no longer proceeded with the attempt to rob or attempt to burglarize the bank, because his wife had returned, and he decided that, quote, his life as a bank robber seemed more and more absurd. He argued on appeal there was insufficient evidence to be convicted of attempted burglary because he voluntarily abandoned his effort to burglarize the bank. But the California Court of Appeal rejected this argument, holding, quote, the relevant factor is the determination of whether the acts of the perpetrator have reached such a stage of advancement that they can be classified as an attempt. Once that attempt is found, there can be no exculpatory abandonment, unquote. And the pinpoint citation for that is at 69. So because an individual in California can be convicted of an attempt even after they have voluntarily abandoned or renunciated their goal, a California attempt is categorically overbroad because this defense is recognized in the majority of jurisdictions. If the Court has no further questions on that issue. I don't know that you've gotten to the hard issue there yet, because the question you acknowledged that our case law suggests that we don't look to affirmative defenses in defining the statute under a categorical approach, but that, as I understand your argument, you think that case law has been superseded by the Supreme Court's decision. Is that correct? That is partially correct. I just wanted to point out, I know we used the phrase affirmative defense in our briefing, and I think it may be fair to just characterize it as a defense. Obviously, the Model Penal Code recalls it an affirmative defense because the defendant bears the burden of proof, but in the 28 states that have codified this defense in statutes, it's just there's an attempt statute, and then one part of that criminally liable for an attempt if he voluntarily abandoned or renunciated the attempt. So it is an affirmative defense in the sense the defendant bears the burden of proof, but I think the more apt way to characterize it would be as a defense. But with regard to our argument about Moncrief effectively overruling prior Ninth Circuit precedent, Moncrief, the government argued that the categorical approach is only concerned with the elements of the offense. And this Court's cases, whether it's Charles or Velasquez's boss or Gill that dealt with the issue of defenses and the categorical approach, advanced the same argument that the government had in Moncrief, which is the categorical approach is only concerned with the elements of the offense. But the United States Supreme Court rejected that argument and actually looked to a defense in that case. It was whether the marijuana involved was a small amount for no remuneration. And in that case, the individual would be guilty of a misdemeanor and not a felony. And I think it actually bears emphasis that one thing that came up at the end of Moncrief was the anti-firearms exception. And in Gill v. Holder, this Court held that the anti-firearms exception could not be considered in the categorical approach because it was an affirmative defense. But at the end of Moncrief, the Supreme Court effectively rejects that argument. And this would be at 133 Supreme Court at 1693. And the Court says, quote, Finally, the government suggests that our holding will frustrate the enforcement of other aggravated felony provisions, like Section 1101A43C, which refers to a Federal firearm statute that contains an exception for anti-firearms. The government fears that a conviction under any State firearms law that lacks such an exception will be deemed to fail the categorical inquiry. But then the Court goes on to say that that's not necessarily true because under Duaneus Alvarez, there must be a realistic probability, not a theoretical possibility, that the State would apply a statute to conduct that falls outside the generic definition of a crime. And then it talks about the defendant having to cite the specific State cases where the anti-firearm exception was not recognized. So that would seem to directly contradict this Court's holding in Gill, which is that the Court could not consider the anti-firearm exception because it was an affirmative defense in conducting the categorical approach. And Charles and Velazquez-Bosk also say that affirmative defenses are precluded. I think it's important to note that the origin of this case law derives from Charles, which was actually a plein air case. And Charles actually concerned the common law defense at issue there, which was as opposed to something that was specific to the actual defense of entrapment. And this Court, under the plein air standard, rejected the argument that the availability or the differing standards of proof for entrapment could be considered in the categorical approach. And then Velazquez-Bosk cites Charles. Charles doesn't really provide much in the way of reasoning. And then Gill cites Velazquez-Bosk. So I think that Montcrieff is clearly irreconcilable with the holding or the theory or reasoning of those three cases. And as a result, I think that the categorical approach does look to the availability of defenses. And here, it's a defense that at least it's recognized specifically in the Model Penal Code in the states that have the 28 states that have a statute dealing with attempt that recognize this. It's in the state statute. It's not just simply a common law defense like insanity or intoxication. It's something that's specific to attempt. And so I think that this really goes to the heart of what the Supreme Court is concerned about, as we've seen recently in DeKalb and Montcrieff, with the idea of fairness and a uniform definition. And so the idea that someone could be convicted of an attempt in California and never be able to raise the defense of voluntary abandonment or as a defense to attempt, it strikes at the heart of the idea of there being a uniform or national model, which is what the categorical approach is really all about. And if the Court ‑‑ Can I get to the other issues? This is your chance. Okay. Thank you. So with respect to the trial issues, there's four issues, three substantive issues, and then a claim of cumulative error. And the argument that we've presented is that the errors in connection with Agent Clark and the A file testimony cumulatively prejudiced Mr. Albino. First, Agent Clark began by identifying Mr. Albino as the individual pictured in the A file, even though she had never met him. That was clearly a violation of Rule 701 and also a violation of this Court's holding in LaPierre, which held that in order for an individual to provide proper lay identification testimony ‑‑ What difference did it make? Well, I think that it ultimately bolstered her credibility. And I think that when the errors are considered ‑‑ How would it bolster her credibility to identify somebody with a photograph when the jury is capable of doing that for themselves and where there is other identification of defendant available on the record, the fingerprints are what I recall. Frankly, the identification of the photograph, I think I agree that it was error, but I couldn't see how it really made any difference. Well, of the three errors we've alleged, I would agree that it's not the most significant of those three errors. However, I do think that when considered cumulatively with the other errors, the collective prejudice did ultimately undermine confidence in the verdict. Why don't we get to an error that did make a difference? Okay. So we've raised a Confrontation Clause challenge, and I know one of the cases that has come up is Rojas, which I know, Judge Clifton, you were on that case. Really? Used to be. Rojas-Pedroza, the 2013 Ninth Circuit case. I even looked at the case. It was an opinion by Judge Ikuda. Well, it's all her fault, then. So, and so the government sided that case and relied on that case to support its argument that the notice to appear did not contain testimonial statements, and there was no Confrontation Clause violation. But I think that the key distinction to point out between this case and Rojas-Pedroza is that in Rojas-Pedroza, the documents at issue were not prepared in anticipation of litigation in an immigration court. And in fact, no case from this court has squarely held whether the anticipation of litigation language from Crawford and Supreme Court cases can refer to non-criminal litigation. Well, it makes an A-file testimonial. I mean, an A-file isn't prepared. Granted, there's a lot of litigation that comes after it, especially in this district, but why is the A-file considered testimonial subject to the Confrontation Clause? Well, specifically the notice to appear, that particular document was testimonial because it was prepared in anticipation of litigation in an immigration court and then offered subsequently into evidence in a criminal trial. And, of course, the Sixth Amendment's Confrontation Clause doesn't apply to non-criminal proceedings, but that doesn't mean that something generated in anticipation of litigation for a civil proceeding, like a deposition, for example, and then authored subsequently into evidence in a criminal trial could be testimonial. Kennedy, I got sidetracked by your reference to the notice to appear, but I can't what difference did that make? What was significant from the A-file was the order of removal, the fact that the NTA initiates the process. I mean, that's like an indictment. That's a charging document. It starts the ball rolling. But what was significant about the file other than the fact of the removal? Well, I think that the government actually referred to the A-file documents as evidence of alienage during its rebuttal. There was a — and let me — Well, the removal order does that. I mean, if he's not an alien, he doesn't get removed. The fact that DHS may have started the process, if it doesn't result in I.J.'s decision that he's not a U.S. citizen, he's subject to removal, and that order of removal, the NTA didn't prove anything. Well, there's two elements that are at issue in a 1326. One is that the alien was previously removed. And the other one is that the — And that's the key point. But the — we're claiming that this went to the element of — that it was prejudicial on the element of alienage, which is another element. And the actual statements at issue in the notice to appear said, you are not a citizen of — or national of the United States. You are a native of Mexico and a citizen of Mexico. And so — and they were in capital letters. They were signed by a deportation officer. So I think it did go to that element. And then in the — in the actual — in the government's rebuttal during closing, the government said — because the key — the key argument for the defense was that this was an unreliable system of record-keeping, the AFI record-keeping system. It suffers from serious flaws. And that the government failed to prove his guilt beyond reasonable doubt. And so the government said in rebuttal, quote, the paper case that defense counsel mentioned is corroboration of the defendant's own statements. He said he's a citizen of Mexico. The documents show he was deported to Mexico. So — and that's it. Excerpts of record 258 to 59. So it was used to support the argument that Mr. Albino was not a citizen or national of the United States. And I think we've referenced two sets of confrontation clause challenges. The first is the notice to appear. The second is the certificates of authenticity, which also — the portion that actually stated that the documents attached to the certificates came from Mr. Albino's A-file and that there wasn't A-file from Mr. Albino. That made it more likely that he was not a naturalized — not a natural-born citizen of the United States. And so that also went to the element of alienage as well. And it was prejudicial in that respect. I think that the I-212 testimony regarding — by Agent Clark was also improper expert opinion testimony. There was no objection to that testimony, was there? There was not. But we've argued that because the government failed to provide advance notice that she would be offering expert testimonies required by Rule 16a. Was there any objection to the failure to advise you in advance of that expert testimony? No, there was not. But I think that part of the problem is that the actual rule, Rule 16 — or, excuse me, the purpose of Rule 16, as this Court noted in United States v. Figueroa-Lopez, is to, quote, minimize surprise that often results from unexpected testimony, reduce the need for continuances, and to provide the opponent with a fair opportunity to test the merit of the expert's testimony through focused cross-examination, unquote. So the whole purpose is to reduce surprise. So — Does that speak to the need to make objection and the question of whether a plein air standard applies? I mean, the purpose of the rule is there, but it's not like defense didn't know the testimony was being offered. It may not have conceived it or — the characterization of it as expert testimony might not have come up until later, but plainly the testimony was being offered and it wasn't objected to on any of these grounds. So why wouldn't it be a plein air standard? Well, I think one of the purposes of the plein air standard is to encourage the record to be adequately developed below. And here we have a very detailed record about Agent Clark's qualifications. So respectfully, I think that that concern wouldn't arise here in determining whether or not she's qualified to give expert testimony. I seem that my time has elapsed. If the Court has no further questions, I'll — We'll still give you a minute for a rebuttal. Thank you. And now we'll hear from the government. Thank you, Your Honor. Ladies and — may it please the Court, Dale Blankenship on behalf of the United States. I just want to hit on the last issue raised before the — by Appellant's counsel, and that's with respect to the expert testimony of Agent Clark. It's the United States position that it wasn't actually expert testimony, that this was the evidence that came in through Agent Clark's testimony related to her findings of her review of the A file. And in order to give some explanation to why she could possibly be looking for this elusive I-212, it's necessary for her to establish through her testimony that there's a purpose or a way that a person can actually apply for reentry, and that way is through the I-212 process, but that she looked both through the file, the A file, and the claims database to search for that document, and there was none. And I think it's a little — the defense counsel was fully aware that this was going to be raised at trial, that this is not a surprise testimony in the district of California. This — it was containing — I'm sure they were shocked — shocked to learn that she was there to testify that there was nothing in the file that showed he was authorized to reenter. So it just seems that it would be a little out of the ordinary that she would find that surprising that that testimony would come into the trial. But some of her testimony did get — seemed to go a little farther afield than I've usually seen. I don't see the number of cases that you do, but she did seem to sound a little more expert-like than some testimony I've seen. I think that was actually following the defense counsel's cross-examination. What I was trying to get her — trying to — the governance counsel at trial was trying to get the witness's attention drawn back to just the facts that applied in this case. And what the defense counsel did during cross-examination was she started saying, well, there's this N-600 that's available. A person can use that, right? Well, that doesn't apply in this case at all. And there's also this other method that a person can use. You can get a passport. Well, that doesn't apply either. So I'm trying to just — at trial, we were just trying to draw the jury's attention back to the real facts of that great issue. With respect to the confrontation clause issue, I think this Court's precedent in Rojas-Pedrosa, it can't really — the language that was introduced in the notice of intent to reinstate, those specific statements that are contained in the notice of intent to reinstate, in which the document's purpose are almost identical. The notice to appear does the same thing that the notice of intent to reinstate the decision of the immigration judge's order does. And it informs the alien that they are not — of the allegations that the United States would have to prove. And those very particular statements that were on this particular notice to appear, that appellants now complain of, were the same statements that this Court in Rojas-Pedrosa actually approved of as not being — or actually confirmed were not testimonial statements. In fact — well, I'll just move on. With the other issues, the certificate of authenticity, again, I think the Court's precedent in U.S. v. Inequu, that certification language contained on the document that was at issue in Inequu can't really appreciably be distinguished from the actual certificate of authenticity that was attached to the A-file documents that were introduced in this case. Would you address the — read a creative argument regarding Moncrief? Yes, Your Honor. I — it took me probably five or six readings to really appreciate what Moncrief was driving at. Because at first blush, I can see how it makes sense that, yes, they're now considering something that may be what could be considered an affirmative defense. But as I went, I checked out the Carrusco, Carruschi, one of the previous cases that the Supreme Court had decided on the very issue of whether a social distribution of marijuana could be considered an aggravated felony. And I think that was the focus of the Supreme Court in the Moncrief case, is limiting — and I think that case should be limited to its facts. The Supreme Court decided that case specifically to resolve the conflict — Well, we don't — we aren't supposed to limit Supreme Court cases to their facts very often. Oh, I understand that, Your Honor. But the holding itself actually lends to the reason it was actually decided. It was — they were looking at that social sharing of marijuana. And the social sharing of marijuana at issue under the Georgia statute did not conform or was ambiguous as to whether it could be a felony or a misdemeanor. Trying to draw from the distinction or the inability to distinguish the Georgia statute at issue and the inability to fit categorically under the Controlled Substances Act as either a felony or a misdemeanor, it speaks too much to say that now all affirmative defenses should now be considered under the categorical approach. The Court's previous holdings with respect to why a categorical approach does not factor into — I'm sorry, why affirmative defenses don't factor into the categorical approach, I don't think were affected by this decision. And one of the — the Moncrieff — I'm just pulling out from the decision itself at 1687. Moncrieff's conviction could correspond to either a CSA felony or a CSA misdemeanor. Ambiguity on this point means that the conviction did not necessarily involve facts that correspond to an offense punishable as a felony under the CSA. Under the categorical approach, Moncrieff was not convicted of an aggravated felony. It's not clear, or as they would say in my hometown, you can't get there from here. It's not — the circuitous route that the defense counsel actually — or I'm sorry, the defense counsel has to take to get to suggesting that now Moncrieff requires the categorical approach to include or encompass affirmative defenses, it's going too far. Moncrieff specifically looked at this ambiguity for the social sharing of marijuana, and it's — the whole — the entirety of the opinion was focused on that. And they referenced that this is the third time in a number of years that they've had to address this very issue. So this — Well, if you read it in the light of the opinion that was being reversed, I — you can see that — that there is an involvement of affirmative defenses there. Yes, Your Honor. That — certainly that they've taken into account. There are some — and I wish I had a better grasp on all the cases that they had actually been referring to, but I — the one case that was highlighted by appellant's counsel with respect to the affirmative defense, the antique firearm issue, which was one of the subjects of the Gill case, it — the court points out that with respect to that particular argument put forth by the United States in Moncrieff, that the court looks to the I think that's how they distinguished that. And it didn't say, well, the affirmative defense argument that the United States is putting forth on that particular issue is now reversed and now affirmative defense has come in. It was — it was saying that — it was pointing out that the hypothetical, this possibility, remote possibility, is not at play because of the Supreme Court's prior decision. It's — the — although very well thought out and — and I could — I have to applaud appellant's counsel for seeing that issue because it was apparent to the — it wasn't apparent to anybody else at the time that this would actually — could be construed this way. Welcome to the wonderful world of the categorical approach. And it seems to be defying my attempts to logically apply it. But I do — I'll see the rest of my time unless the members of the court have any questions. Looks like you've taken care of us. We thank you for the argument. And we'll hear rebuttal. Just very briefly on why Moncrieff is clearly irreconcilable with prior circuit decisions from this Court. Moncrieff rejected the government's argument that the categorical approach only concerns the elements of the offense. They even said that when the government argued, quote, depending upon the presence or absence of certain factors that are not themselves elements of the crime, that that was — that that was not something that could be considered in the categorical approach. And Gill, Velasquez-Bosk, and Charles all say the categorical approach only concerns the elements of the offense. And so we can't consider affirmative defense. How is it Moncrieff just considered — I mean, I look at Moncrieff, and it's looking at elements in dividing between what's a felony and what's a misdemeanor. But it's still looking at elements. It's making a point of not — it's needed highlights. You don't look at particular facts. You look at elements. And there's not a categorical match. You've said a few times, and I should have asked you before, I'm not sure I follow what you mean by saying Moncrieff says don't look at elements. The elements of the — it was an illicit trafficking offense that was at issue, right, in order to be a controlled substance offense, a punishment under the CSA. And there it was distribution of marijuana. So the government said, look, the Georgia statute that criminalizes distribution of marijuana matches up — it aligns perfectly with the Federal Controlled Substances Act. But what the Georgia statute didn't have was this affirmative defense where, at sentencing, the defendant could argue that it was a small amount of marijuana for no remuneration, at which point it would be punished as a misdemeanor and not a felony. That wasn't an element of the offense of distribution of marijuana. But it's an element of the offense in the sense that it — for determining whether it's a felony under Federal law, that's a box to be checked. I mean, if it turns out that it's a small amount of marijuana and so forth, then it's still a violation under Federal law, but it's not a felony. It's a misdemeanor. And that's the piece that seemed to be missing. So they're still looking at elements. They're not looking at the particular facts of the case. And you're not urging us to look at the particular facts of your client's case. So you are in the categorical world. But it seems to me the categorical world is always about elements. So I'm not sure what else it is you're telling us we should be considering. Well, I guess I respectfully disagree. I think that Moncrief — I mean, the government specifically said that the categorical approach was only concerned with elements, and the Court rejected that approach. I think, if anything, there's actually a stronger argument here than Moncrief for looking beyond the elements of the offense, because Moncrief ultimately concerned punishment, whether it was a misdemeanor or a felony. But here we're actually looking at the substantive offense of attempt. In other words, if an individual can never raise the defense of voluntary abandonment or renunciation, there's really no way of knowing whether an individual in California is convicted of the substantive, generic offense of attempt that's recognized in the majority of jurisdictions. So, if anything, I think it's — it's actually a stronger argument here than in Moncrief. If the Court has no further questions, I'll stop. We appreciate the helpful arguments given to us by both counsel. The case just argued is submitted.
judges: Tunheim, Schroeder, Clifton